COPY

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (CSB# 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

FILED
CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES
BY
2012 MAR 23   PM 4: 05

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON MUHAMMAD, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>CHINA SKY ONE MEDICAL, INC., YAN-QING LIU, XIAO-YAN HAN, YU-BO HAO, YU-KUN ZHANG, AND HONG-YU PAN,<br><br>Defendants. | CASE NO.: CV12-2552-DMG (CWx)<br><br>COMPLAINT<br><br>CLASS ACTION<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brandon Muhammad ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned counsel, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia,* the investigation conducted by and through his counsel, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by

1

and regarding China Sky One Medical, Inc. ("China Sky" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased China Sky securities between April 16, 2009 and February 14, 2012, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws and to pursue remedies under §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10(b)-5 promulgated thereunder against the Company and certain of its top officials.

2.      China Sky manufactures pharmaceutical and medicinal products and diagnostic kits.

3.      On February 15, 2012, the Company disclosed that Defendant Liu, the Company's Chief Executive Officer, was taking a medical leave and "being treated for a life-threatening illness."  In addition, the Company disclosed the resignation of 26 middle-management level employees, nine of whom worked in the Company's accounting department.

4.      On these revelations, China Sky shares declined $0.43 per share, or 28%, to close at $1.10 on February 15, 2012.

5.      That same day, NASDAQ halted trading in the stock, until it received adequate "additional information requested" from the Company.

6.      During the Class Period, Defendants issued false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's earnings were inflated; (2) the Company was inflating gross margins; (3) the Company

lacked adequate internal financial controls; and (4) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

10.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C.  § 1391(b) as China Sky's securities traded within this District.

11.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff Brandon Muhammad ("Plaintiff"), as set forth in the accompanying certification, purchased China Sky securities at artificially inflated prices during the Class Period and has been damaged thereby.

13.     Defendant China Sky is a Nevada Corporation, with its principal place of business located at No. 2158 North Xiang An Road, Song Bei District, Harbin, China, 150028.  China Sky's common stock trades on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "CSKI."

3

14.     Defendant Yan-Qing Liu ("Liu") at all relevant times, has been the Company's Chief Executive Officer ("CEO"), President and Chairman of the Board of Directors ("Board).

15.     Defendant Xiao-Yan Han ("Han") served as the Company's Vice Chairman and director on the Board from May 2006 through September 2011.

16.     Defendant Yu-Bo Hao ("Hao") served as the Company's CFO from November 2008 through August 31, 2010.   Between November 2010 and September 2011, Defendant Hao served as the Company's Secretary, Vice President and a Director on the Board.

17.     Defendant Yu-Kun Zhang ("Zhang") was the Company's Chief Accounting Officer and principal financial officer from August 2010 through November 2010.  Defendant Zhang serves as the Company's Manager of Finance.

18.     Defendant Hong-Yu Pan ("Pan") has been the Company's CFO and Treasurer since November 2010.

19.     The Defendants referenced above in ¶¶ 13 through 18 are sometimes referred to as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

20.     China Sky manufacturers, markets, and distributes branded Chinese medicine mainly for external use.  Through its wholly-owned subsidiaries, Harbin Tian Di Ren Medical Science and Technology Company, Harbin First Bio-Engineering Company Limited, Heilongjiang Tianlong Pharmaceutical, Inc., and Peng Lai Jin Chuang Company Pharmaceutical Company, the Company manufactures and distributes around 90 pharmaceutical products, including traditional Chinese medicines, western medicines, diagnostic kits, and cosmetics. These products are made with different formulations, such as creams, ointments, powders, sprays, injections, and medicated skin patches.  The Company's leading products include Sumei Slim patch for weight loss, anti-hypertension patches for

high blood pressure, compound camphor cream for treating dermatitis, and other drops and ointments.  The Company's distribution network covers 22 provinces and 125 municipalities in the People's Republic of China ("China").   China Sky distributes its products through third party distributors and direct sales to approximately 4500 retail stores and hospitals.  Additionally, the Company exports its products to over 20 countries and regions including the U.S., Germany, Denmark, Switzerland, Hungary, South Korea, Singapore, Australia, Malaysia, Taiwan, and Hong Kong.

### Materially False and Misleading
### Statements Issued During the Class Period

21.   On April 15, 2009, after the market closed, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2008.  For the fourth quarter, the Company reported net income of $6.9 million, or $0.45 diluted earnings per share ("EPS") and revenue of $26 million, as compared to net income of $4.1 million, or $0.25 diluted EPS and revenue of $12.7 million for the same period a year ago.  For the year, the Company reported net income of $29 million, or $1.87 diluted EPS and revenue of $91.8 million, as compared to net income of $15.3 million, or $1.15 diluted EPS and revenue of $49 million for the same period a year ago.

22.   That same day, the Company filed an annual report for the period ended December 31, 2008 on Form 10-K with the SEC, which was signed by, among others, Defendants Liu, Hao, and Han, and reiterated the Company's announced financial results and financial position.  In addition, the Form 10-K contained signed certifications by Defendants Liu and Hao, stating that the financial information contained in the Form 10-K was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

23.   On May 13, 2009, the Company filed a quarterly report for the period ended March 31, 2009 on Form 10-Q with the SEC, which was

signed by Defendant Liu and represented the Company's quarterly financial results and financial position.   In addition, the Form 10-Q contained signed certifications by Defendants Liu and Hao stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

24.   On May 14, 2009, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2009.  For the quarter, the Company reported net income of $7 million, or $0.43 diluted EPS and revenue of $25 million, as compared to net income of $8 million, or $0.50 diluted EPS and revenue of $12.4 million for the same period a year ago.

25.   On August 14, 2009, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2009.  For the quarter, the Company reported net income of $8 million, or $0.51 diluted EPS and revenue of $32 million, as compared to net income of $8 million, or $0.50 diluted EPS and revenue of $24 million for the same period a year ago.

26.   That same day, the Company filed a quarterly report for the period ended June 30, 2009 on Form 10-Q with the SEC, which was signed by Defendants Liu and Hao and reiterated the Company's announced quarterly results and financial position.  In addition, the Form 10-Q contained signed certifications by Defendants Liu and Hao, stating that the financial information contained in the Form 10-Q was accurate and they disclosed any material changes to the Company's internal control over financial reporting.

27.   On November 16, 2009, the Company filed a quarterly report for the period ended September 30, 2009 on Form 10-Q with the SEC, which was signed by Defendants Liu and Hao and represented the Company's quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications by Defendants Liu and Hao, stating that the financial information contained in the Form 10-Q was accurate and that they

Class Action Complaint for Violation of the Federal Securities Laws

disclosed any material changes to the Company's internal control over financial reporting.

28.     On November 17, 2009, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2009. For the quarter, the Company reported net income of $12.6 million, or $0.75 diluted EPS and revenue of $43 million, as compared to net income of $10 million, or $0.60 diluted EPS and revenue of $30 million for the same period a year ago.

29.     On March 16, 2010, the Company filed an annual report for the period ended December 31, 2009 on Form 10-K with the SEC, which was signed by, among others, Defendants Liu, Hao and Han, and represented the Company's annual financial results and financial position. In addition, the Form 10-K contained signed certifications by Defendants Liu and Hao, stating that the financial information contained in the Form 10-K was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

30.     On March 17, 2010, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2009. For the fourth quarter, the Company reported net income of $5.3 million, or $0.32 diluted EPS and revenue of $30 million, as compared to net income of $7 million, or $0.45 diluted EPS and revenue of $26 million for the same period a year ago. For the year, the Company reported net income of $35 million or $2.07 diluted EPS and revenue of $130.1 million, as compared to net income of $29 million, or $1.87 diluted EPS and revenue of $92 million for the same period a year ago.

31.     On May 17, 2010, the Company filed a quarterly report for the period ended March 31, 2010 on Form 10-Q with the SEC, which was signed by Defendants Liu and Hao and represented the Company's quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications by Defendants Liu and Hao, stating that the financial information contained in the

Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

32.   On May 18, 2010, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2010.  For the quarter, the Company reported net income of $12.6 million, or $0.74 diluted EPS and revenue of $28.9 million, as compared to net income of $7 million, or $0.43 diluted EPS and revenue of $25 million for the same period a year ago.

33.   On August 9, 2010, the Company filed a quarterly report for the period ended June 30, 2010 on Form 10-Q with the SEC, which was signed by Defendants Liu and Zhang and represented the Company's quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications by Defendants Liu and Zhang, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

34.   On August 10, 2010, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2010.  For the quarter, the Company reported net income of $12 million, $0.73 diluted EPS and revenues of $41 million, as compared to net income of $8 million, or $0.51 diluted EPS and revenue of $32 million for the same period a year ago.

35.   On September 3, 2010, after the market closed, the Company issued a press release revising its financial guidance for 2010.   Also, the Company announced the resignation of Defendant Hao, "due to health considerations."  The press release stated the following, in relevant part:

> Management's reduced guidance reflects the termination of relationships with certain private distributors, who after several rounds of discussions, chose to end their cooperation with the Company after learning that their business information was disclosed in the Company's public SEC filings and would continue to be disclosed in such documents as required by SEC regulations. This disclosure, these distributors claim has led to increased scrutiny of

their financial performance by government authorities within China. While the Company expects to replace these lost distribution arrangements over time, revenue and net income in the second half of 2010 are expected to be negatively impacted by the disruption in distribution channels. The Company expects to incur higher selling and marketing costs during second half 2010 to develop new distributor relationships.

36.     As a result, China Sky shares declined $3.02 per share or 31%, to close at $6.67 per share on September 7, 2010.

37.     On November 8, 2010, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2010. For the quarter, the Company reported net income of $8.6 million, or $0.51 diluted EPS and revenue of $36 million, as compared to net income of $12.6 million, or $0.75 diluted EPS and revenue of $43 million for the same period a year ago.

38.     That same day, the Company filed a quarterly report for the period ended September 30, 2010 on Form 10-Q with the SEC, which was signed by Defendants Liu and Zhang and reiterated the Company's announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications by Defendants Liu and Zhang, stating that the financial information contained in the Form 10-Q was accurate and they disclosed any material changes to the Company's internal control over financial reporting.

39.     On March 14, 2011, the Company filed an annual report for the period ended December 31, 2010 on Form 10-K with the SEC, which was signed by, among others, Defendants Liu, Pan, Han and Hao, and represented the Company's annual financial results and financial position.  In addition, the Form 10-K contained signed certifications by Defendants Liu and Pan, stating that the financial information contained in the Form 10-K was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

40.   On March 15, 2011, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2010. For the fourth quarter, the Company reported net income of $2.5 million, or $0.15 diluted EPS and revenue of $27 million, as compared to net income of $5.3 million, or $0.32 diluted EPS and revenue of $30 million for the same period a year ago.   For the year, the Company reported net income of $36 million, or $2.14 diluted EPS and revenue of $133 million, as compared to net income of $29 million, or $1.87 diluted EPS and revenue of $92 million for the same period a year ago.

41.   On May 10, 2011, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2011.   For the quarter, the Company reported net income of $6 million, or $0.36 diluted EPS and revenue of $28 million, as compared to net income of $12.6 million, or $0.74 diluted EPS and revenue of $29 million for the same period a year ago.

42.   That same day, the Company filed a quarterly report for the period ended March 31, 2011 on Form 10-Q with the SEC, which was signed by Defendants Liu and Pan and reiterated the Company's announced quarterly results and financial position.   In addition, the Form 10-Q contained signed certifications by Defendants Liu and Pan, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

## **THE TRUTH BEGINS TO EMERGE**

43.   On May 19, 2011, China Economic Review published an article warning investors that the Company's "[i]mpressive results are suspect." Specifically, the article noted the following, in relevant part:

China Sky One Medical operates in a promising market – total sales from TCM products grew 27% to US$33.1 billion in 2010. However,

investors should continue to be cautious about this stock. For one thing, our research confirms that China Sky One Medical's margins are suspiciously high. The company reported a gross margin of 72.9% in 2010; that compares to an average of 45.5% for 27 China-listed TCM companies, according to data from Qilu Securities.

Yanqing Liu, the CEO of China Sky One Medical, told China Economic Review that its hefty margins are the result of its in-house herb farm: The company can obtain raw materials from the planting area at a lower cost, as well as exchange the herbs with other TCM producers to acquire the materials it needs.

But a comparison with the company's close competitors indicates this argument does not hold water. Tonghua Golden Horse and Guilin Sanjin, which have similar product lines to China Sky One Medical, both own large herb-planting bases. Tonghua Golden Horse's average gross margins were 60.1% in the past three years, around 16.4 percentage points lower than those of China Sky One Medical.

Guilin Sanjin's gross margins were almost as high as China Sky One Medical's, but Guilin Sanjin spends far more on advertising – about 16% of sales revenue between 2008 and 2010 – and has better product recognition as a result. That brand was well known among the customers and pharmacy counter staff we interviewed, whereas few knew of China Sky One Medical's brand.

***

China Sky One Medical does not share this competitive advantage. None of the company's main products – including camphor cream, patches for pain relief, weight loss and anti-hypertension, and eye drops – is unique in the market in terms of effect or material.

The company has also reported other suspect figures: In 2008, its figure for inventory turn-around, days inventory outstanding (DIO), bottomed out at 6.79 days per year, far below the average of supermarket and convenience stores chains. Its DIO has lengthened since then, but the company still reported turning over inventory nearly seven times as fast as domestic competitors, according to Ms. Xu, an analyst at Dongwu Securities.

Custom research by China Economic Review also casts doubt onto

China Sky One's claim that its distribution network covers all of China's major metropolitan areas and, consequently, its impressive annual revenue figures.

China Sky One Medical management needs to give investors a more detailed explanation of how it achieves such impressive operating results by spending little on advertising its brand and producing medicines that can be manufactured by many of its competitors. Until that day, we recommend investors avoid this stock.

44.    As a result of this disclosure, China Sky's shares declined $0.15 per share or nearly 5%, to close at $2.86 per share on May 19, 2011.

45.    On August 9, 2011, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2011. For the quarter, the Company reported net income of $6 million, or $0.36 diluted EPS and revenue of $38 million, as compared to net income of $12 million, or $0.73 diluted EPS and revenue of $41 million for the same period a year ago.

46.    That same day, the Company filed a quarterly report for the period ended June 30, 2011 on Form 10-Q with the SEC, which was signed by Defendants Liu and Pan and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications by Defendants Liu and Pan, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material change to the Company's internal control over financial reporting.

47.    The statements referenced in ¶¶ 21-35; 37-42; 45-46 above were materially false and/or misleading because they represented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them that (1) the Company was inflating reported earnings; (2) the Company's gross margins were inflated; (3) the Company lacked adequate internal and financial controls; and (4) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

48.    On September 9, 2011, after the market closed, the Company disclosed  the resignations of Defendants Hao and Han.

49.    As a result of this news, China Sky securities declined $0.25 per share or 10%, to close at $2.28 per share on September 12, 2011.

50.    On November 9, 2011, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2011. For the quarter, the Company reported net income of $531,000, or $0.03 diluted EPS and revenue of $26.6 million, as compared to net income of $8.6 million, or $0.51 diluted EPS and revenue of $36 million, for the same period a year ago.

51.    That same day, the Company filed a quarterly report for the period  ended September 30, 2011 on Form 10-Q with the SEC, which was signed by Defendants Liu and Pan and reiterated the Company's announced quarterly financial results and financial position.   In addition, the Form 10-Q contained signed certifications by Defendants Liu and Pan, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

52.    On December 19, 2011, after the market closed, the Company disclosed that Defendant Liu "was sent to the hospital due to a massive hemorrhage of his intestinal tract that occurred on December 17, 2011."

53.    On February 15, 2012, the Company disclosed that Defendant Liu "is  being treated for a life-threatening  illness." In addition, the Company disclosed the resignation of 26 "middle-management level employees." Specifically, nine of the employees were in the accounting department and two were in the internal controls department.

54.    In addition, that same day, NASDAQ announced a trading halt in China Sky's shares until it received required "additional information" from the Company.

55.   On these revelations, China Sky's securities plummeted $0.43 per share or 28% before the trading halt.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

56.   Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired China Sky securities during the Class Period (the "Class"); and were damaged thereby.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

57.   The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, China Sky securities were actively traded on NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by China Sky or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

58.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

59.   Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

60.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of China Sky;

- whether the Individual Defendants caused China Sky to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of China Sky securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

61.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

62.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- China Sky securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold China Sky securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

63.   Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

**Applicability of Presumption of Reliance**
**Fraud-on-the-Market Doctrine**

64.   At all relevant times, the market for China Sky's common stock was an efficient market for the following reasons, among others:

(a)   China Sky met the requirements for listing on the NASDAQ, a highly efficient and automated market;

(b)   During the class period, on average, hundreds of thousands of shares of China Sky stocks were traded on a weekly basis, demonstrating a very active and broad market for China Sky stocks and permitting a *strong* presumption of an efficient market;

(c)   As a regulated issuer, China Sky filed periodic public reports with the SEC;

(d)   China Sky regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     China Sky was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period.  Each of these reports was publicly available and entered the public marketplace;

(f)     Numerous NASD member firms were active market-makers in China Sky stocks at all times during the class period; and

(g)     Unexpected material news about China Sky was rapidly reflected and incorporated into the Company's stock price during the Class Period.

65.     As a result of the foregoing, the market for China Sky's common stock promptly digested current information regarding China Sky from all publicly available sources and reflected such information in China Sky's stock price.  Under these circumstances, all purchasers of China Sky's common stock during the Class period suffered similar injury through their purchase of China Sky's common stock at artificially inflated prices, and a presumption of reliance applies.

## FIRST CLAIM

### Violation of Section 10(b) Of

### The Exchange Act Against and Rule 10b-5

### Promulgated Thereunder Against All Defendants

66.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.     This claim is brought against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5  promulgated thereunder by the SEC.

68.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated  as a fraud and deceit  upon Plaintiff  and the other members of  the Class; made various untrue statements of material facts and omitted to state

material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of China Sky securities; and (iii) cause Plaintiff and other members of the Class to purchase China Sky securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

69. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for China Sky securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about China Sky's finances and business prospects.

70. By virtue of their positions at China Sky, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Such acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

71.   Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of China Sky securities from their personal portfolios.

72.   Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.   As the senior managers and/or directors of China Sky, the Individual Defendants had knowledge of the details of China Sky's internal affairs.

73.   The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of China Sky.   As officers and/or directors of a publicly traded company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to China Sky's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of China Sky securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning China Sky's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased China Sky securities at artificially inflated prices and relied upon the prices of the securities, the integrity of the market for the securities, and/or upon statements disseminated by Defendants, and were damaged thereby.

74.   During the Class Period, China Sky securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of China Sky securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other

members of the Class known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid.  At the time of the purchases by Plaintiff and the Class, the true value of China Sky securities were substantially lower than the prices paid by Plaintiff and the other members of the Class.   The market price of China Sky securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

75.   By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## SECOND CLAIM

### Violation of Section 20(a) Of

### The Exchange Act Against the Individual Defendants

77.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78.   During the Class Period, the Individual Defendants participated in the operation and management of China Sky, and conducted and participated, directly and indirectly, in the conduct of China Sky's business affairs.   Because of their senior positions, they knew the adverse non-public information about China Sky's misstatement of income and inflated gross margins.

79.   As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to China Sky's financial condition and results of operations, and to

correct promptly any public statements issued by China Sky which had become materially false or misleading.

80.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which China Sky disseminated in the marketplace during the Class Period concerning China Sky's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause China Sky to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of China Sky within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of China Sky securities.

81.    Each of the Individual Defendants, therefore, acted as a controlling person of China Sky.  By reason of their senior management positions and/or being directors of China Sky, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, China Sky to engage in the unlawful acts and conducts complained of herein.   Each of the Individual Defendants exercised control over the general operations of China Sky and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

82.    By reason of the above conduct, the Individual Defendants are liable to Section 20(a) of the Exchange Act for the violations committed by China Sky.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b)    Awarding compensatory damages in favor of Plaintiff and the

Class Action Complaint for Violation of the Federal Securities Laws

other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Awarding such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: March 23, 2012                    Respectfully submitted,

                                         **THE ROSEN LAW FIRM, P.A.**

                                         _____
                                         Laurence M. Rosen, Esq. (SBN 219683)
                                         THE ROSEN LAW FIRM, P.A.
                                         355 South Grand Avenue, Suite 2450
                                         Los Angeles, CA 90071
                                         Telephone: (213) 785-2610
                                         Facsimile: (213) 226-4684
                                         Email: lrosen@rosenlegal.com

                                         Counsel for Plaintiff